## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| 425 Third Street SW, Suite 800 | ) | |
| Washington, DC 20024, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | |
| vs. | ) | |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| Litigation Division | ) | |
| Office of General Counsel | ) | |
| Washington, DC 20505, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Judicial Watch, Inc. brings this action against Defendant Central Intelligence Agency to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552.  As grounds therefor, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

### PARTIES

3.       Plaintiff Judicial Watch, Inc. is a not-for-profit, educational organization incorporated under the laws of the District of Columbia and headquartered at 425 Third Street S.W., Suite 800, Washington, DC 20024.  Plaintiff seeks to promote transparency, accountability, and integrity in government and fidelity to the rule of law.  As part of its mission, Plaintiff regularly serves FOIA requests on federal agencies, analyzes the responses it receives,

and disseminates its findings and any records to the American public to inform them about "what

their government is up to."

4.      Defendant Central Intelligence Agency is an agency of the United States

Government and is headquartered at 1000 Colonial Farm Road, McLean, VA 22101.  Defendant

has possession, custody, and control of records to which Plaintiff seeks access.

## STATEMENT OF FACTS

5.      On March 25, 2026, Plaintiff submitted a FOIA request to Defendant seeking

access to the following five categories of public records:

**Category I**

All records relating to the CIA's decision to participate in the investigation of
TWA Flight 800, including the decision to produce the witness perception
animation, including but not limited to:

- All records reflecting who within the CIA authorized or approved the Agency's participation in the TWA Flight 800 investigation, including the level of authority at which the decision was made (Directorate, Deputy Director, Director, or other);

- All records reflecting whether the CIA's involvement was requested by an external party —including the FBI, the Department of Justice, the NTSB, the National Security Council, or the White House — and all communications transmitting any such request;

- All legal analyses, opinions, or memoranda prepared within the CIA regarding the Agency's statutory authority to participate in a domestic aviation accident investigation;

- All records reflecting internal CIA deliberations regarding the decision to produce a publicly disseminated animation characterizing eyewitness accounts, including any dissenting views or objections raised within the Agency;

- All records reflecting coordination between the CIA and the White House — including the National Security Council, the Office of the Chief of Staff, or the Office of

2

the Vice President — regarding the Agency's involvement in the TWA Flight 800 investigation or the production and release of the animation;

- All records reflecting any direction, guidance, or input received from the Department of Justice or the FBI regarding the scope, content, or conclusions of the CIA's analysis;

- All records reflecting communications between CIA Director John Deutch or his office and any FBI, DOJ, NTSB, or White House official regarding TWA Flight 800.

## Category II

All records relating to the production of the CIA's witness perception animation depicting the final moments of TWA Flight 800, including but not limited to:

- All data inputs used in the construction of the animation, including the specific eyewitness accounts selected for modeling, the criteria used to select or exclude individual accounts, and any weighting or scoring applied to individual witness statements;

- All records reflecting the modeling assumptions embedded in the animation, including the assumed timing of the initial explosion, the assumed trajectory and velocity of debris, the assumed altitude and speed of the aircraft at the moment of initial breakup, and the assumed field of view and perceptual capacity attributed to witnesses;

- All records reflecting the software, simulation tools, or computational platforms used to construct the animation, including any contracts or agreements with outside vendors or contractors who assisted in the animation's production;

- All drafts, storyboards, version histories, and internal review records for the animation, including any records reflecting changes made between initial drafts and the final publicly released version;

- All records reflecting internal CIA peer review of the animation's methodology, including any technical or analytical review conducted within the Directorate of Intelligence, the Directorate of Science and Technology, or any other component;

3

- All records reflecting any external peer review of the animation — including by NTSB technical staff, academic consultants, or military analysts — prior to its public release;

- All records reflecting the decision to release the animation publicly, the decision regarding which media outlets would receive it, and any coordination with the FBI or NTSB regarding timing and messaging of the public release;

- All records reflecting communications between CIA personnel and the specific CIA officer who presented the animation publicly, regarding the content, limitations, or evidentiary status of the animation and its conclusions;

- All records reflecting whether the animation's conclusions were presented to the NTSB as evidentiary findings, as analytical products, or in some other capacity, and all records reflecting the NTSB's response to or assessment of the CIA's analysis.

## **Category III**

All records relating to the CIA's analysis of eyewitness accounts of the crash of TWA Flight 800, including but not limited to:

- All records reflecting the CIA's review of individual eyewitness accounts, including any CIA prepared summaries, analyses, or assessments of the accounts of specific witnesses who reported observing an ascending streak of light;

- All records reflecting the methodology applied by the CIA to determine that eyewitness accounts of ascending streaks were attributable to perceptual error rather than observation of an external projectile, including any scientific literature, psychological research, or prior case studies cited in support of that methodology;

- All records reflecting communications between CIA analysts and FBI agents regarding individual eyewitness accounts, including any discussion of how specific accounts should be interpreted, characterized, or categorized;

4

- All records reflecting any direction issued by the CIA, FBI, or NTSB regarding how eyewitness accounts of ascending objects should be recorded or characterized in official investigative documents following the CIA's analysis;

- All records reflecting whether the CIA received or reviewed the FBI Missile Team's triangulation analysis — which used the same eyewitness accounts to identify potential missile launch sites — and any CIA assessment of or response to that analysis;

- All records reflecting whether any witness who reported an ascending streak was contacted by CIA personnel, and if so, the nature and content of those contacts;

- All records reflecting the CIA's assessment of Witness 649, whose sketch submitted to the FBI depicts an object approaching the aircraft from the west, impacting it, and debris falling to the east — a trajectory inconsistent with the CIA's zoom-climb animation.

## Category IV

All records reflecting communications, coordination, or information sharing between the CIA and any other federal agency regarding the TWA Flight 800 investigation, including but not limited to:

- All communications between the CIA and the FBI regarding the FBI's internal Missile Team investigation, including any CIA assessment of the Missile Team's triangulation analysis, any CIA input into the FBI's decision regarding how to respond to the Missile Team's findings, and any CIA communications with FBI Agent in Charge James Kallstrom;

- All communications between the CIA and the NTSB regarding the investigation,  including any CIA input into the NTSB's treatment of eyewitness testimony, any CIA participation in NTSB technical working groups, and any CIA review of or comment on NTSB analytical products;

- All communications between the CIA and the Department of Defense — including the Navy, the Army, and the Joint Chiefs of Staff — regarding TWA Flight 800, including any CIA assessment of military radar data, any CIA review of the China Lake Naval Weapons Center MANPADS

5

analysis, and any CIA communications regarding the covert FBI dredging operation;

- All communications between the CIA and the NTSB, FBI, or DOJ regarding the handling and public characterization of military radar data from the vicinity of the crash site on the night of July 17, 1996;

- All records reflecting any CIA participation in or awareness of the FBI's covert dredging operation, including the trawling operations conducted in the 2.7-nautical-mile radius corresponding to the Stinger missile's effective range;

- All CIA finished intelligence products, assessments, or situation reports relating to TWA Flight 800 that were shared with the White House, the National Security Council, or any congressional committee.

## Category V

All records reflecting the CIA's decisions to classify, maintain classified, or decline to declassify records relating to TWA Flight 800, including but not limited to:

- All records reflecting the original classification level assigned to any CIA records relating to TWA Flight 800, and the specific basis and authority for each classification decision;

- All records reflecting any mandatory declassification review conducted with respect to CIA TWA Flight 800 records, including the results of any such review and any determination that continued classification is warranted;

- All records reflecting CIA responses to any prior FOIA requests for TWA Flight 800 records, including all Vaughn index entries, exemption justifications, and internal deliberations regarding withholding decisions;

- All records reflecting CIA participation in the Lahr v. NTSB litigation or any related proceedings in which the CIA's TWA Flight 800 records were at issue;

- All records reflecting any CIA assessment of whether disclosure of the animation methodology would cause identifiable harm to national security — including any legal

6

opinions, classification guidance, or exemption review memoranda prepared in connection with prior FOIA requests or litigation;

- All records reflecting any referrals of CIA TWA Flight 800 records to other agencies for declassification review, and the results of those referrals.

The date range of the request was identified as July 1, 1996 through December 31, 2003.

6. By letter dated April 27, 2026, Defendant acknowledged receiving Plaintiff's request on March 25, 2026 and advised Plaintiff that the request had been assigned Reference Number F-2026-01348.

7. Plaintiff has received no further communication from the Defendant regarding this request.

8. As of the date of this Complaint, Defendant has failed to: (i) determine whether to comply with Plaintiff's request; (ii) notify Plaintiff of any such determination or the reasons therefor; (iii) advise Plaintiff of the right to appeal any adverse determination; or (iv) produce the requested records or otherwise demonstrate that the requested records are exempt from production.

## COUNT I
### (Violation of FOIA, 5 U.S.C. § 552)

9. Plaintiff realleges paragraphs 1 through 8 as if fully stated herein.

10. Defendant is in violation of FOIA.

11. Plaintiff is being irreparably harmed by Defendant's violation of FOIA, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

12. Plaintiff has no adequate remedy at law.

7

13.     To trigger FOIA's administrative exhaustion requirement, Defendant was required to make final determinations on Plaintiff's request by April 22, 2026.  Because Defendant failed to issue a final determination on Plaintiff's request within the time limits set by FOIA, Plaintiff is deemed to have exhausted its administrative appeal remedies.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) order Defendant to conduct a search for any and all records responsive to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request; (2) order Defendant to produce, by a date certain, any and all non-exempt records responsive to Plaintiff's FOIA request and *Vaughn* index of any responsive records withheld under claim of exemption; (3) enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request; (4) grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and (5) grant Plaintiff such other relief as the Court deems just and proper.

Dated:  May 22, 2026                                    Respectfully submitted,

                                                       */s/  Ramona R. Cotca*
                                                       Ramona R. Cotca
                                                       D.C. Bar No. 501159
                                                       JUDICIAL WATCH, INC.
                                                       425 Third Street SW, Suite 800
                                                       Washington, DC 20024
                                                       Tel:    (202) 646-5172
                                                       Email: rcotca@judicialwatch.org

                                                       *Attorney for Plaintiff*